**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **GERALD MICHAEL LOGAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 11-0054-WS-B** |
| ) | |
| **CHRISTOPHER BREWER, etc., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the Court on the defendants' motion for partial summary judgment.  (Doc. 26).  The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 27-29, 31-33), and the motion is ripe for resolution. After carefully considering the foregoing, the Court concludes that the motion is due to be denied.

## BACKGROUND

The plaintiff was formerly employed by defendant Christopher Brewer Contracting, Inc. ("CBC").  According to the first amended complaint, CBC and co-defendant Christopher Brewer ("Brewer") did not pay him overtime to which he was entitled under the Fair Labor Standards Act ("FLSA") and on October 30, 2010 ultimately fired him in violation of the FLSA due to his actual or planned attempts to collect overtime.  (Doc. 22).  The instant motion is directed towards the retaliatory discharge claim.

"A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following:  (1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action."  *Wolf v. Coca-Cola,*

*Inc.*, 200 F.3d 1337, 1342 (11th Cir. 2000) (internal quotes omitted).  "If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext."  *Id.*  As the defendants acknowledge, (Doc. 27 at 11), the framework and the analysis parallel that under Title VII.  *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 822-24 (11th Cir. 2008).

The defendants make three arguments on motion for summary judgment:  (1) the plaintiff cannot establish that he engaged in activity protected under the FLSA; (2) the plaintiff cannot establish a causal connection between his protected activity and his termination; and (3) the plaintiff cannot show that the defendants' articulated reasons for his discharge are a pretext for unlawful retaliation.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden."  *Id.*  "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial."  *Id.*; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made."  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

[2]

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

### A. Plaintiff's Evidence.

The plaintiff's evidence, which must be credited on the present motion, reflects that he was hired in September 2008 to work as a driver and manual laborer at $15 an hour. His duties included driving a dump truck (normally, loads of rock and dirt), pulling a lowboy trailer, moving equipment, helping other workers on the job site, running errands, and working at the shop, where he made oil changes, checked equipment and cleaned it. He supervised no one. (Plaintiff's Deposition at 30-33, 35).

The plaintiff was paid for 40 hours of overtime in his first three weeks on the job, (Doc. 31, Exhibit B at 1), at which point the defendants announced a switch to salary. The plaintiff's job responsibilities did not change, and he continued to average 50-55 hours of work a week. (Plaintiff's Deposition at 35-36, 198-99).

On March 20, 2010, the plaintiff began keeping a log of his hours. In March or April 2010, job supervisor James Ashberry told the plaintiff there was a federal law requiring payment of time-and-a-half on hours above 40. Around the same time, Ashberry saw the plaintiff's log, and the plaintiff told Ashberry he felt he was entitled to

overtime pay.  The plaintiff and Ashberry spoke about the overtime issue on and off for about a week, and Ashberry seemed sympathetic.  Then Ashberry and Brewer went to lunch and, when they returned, Ashberry promptly told the plaintiff he could not talk to him anymore.  (Plaintiff's Deposition at 31, 51, 53, 75-77, 197).

Four to five months before terminating the plaintiff, Brewer began engaging the plaintiff in hostile conversations.  These included talking down to the plaintiff and using abusive language, including in front of others.  While this behavior had occurred rarely before, at this point it became much more frequent, occurring about every two weeks.  It became even more frequent as the October 30 termination date approached.  (Plaintiff's Deposition at 80-83, 208-09).

About three months before the termination, Brewer began giving the plaintiff more labor-intensive assignments outside his normal duties.  These included such things as splitting firewood, cutting grass, pressure washing and other tasks at Brewer's hunting camp.  The plaintiff had performed such tasks occasionally before, but they became more frequent.  (Plaintiff's Deposition at 83, 84, 85, 190).

About two months before he was terminated, the plaintiff asked Brewer to put him back on an hourly basis, and Brewer refused.  The plaintiff called a toll-free number and spoke with a federal labor employee, who advised him he was a non-exempt employee.  A month to a month and a half before the termination, the plaintiff asked Brewer if he knew the law concerning overtime and told Brewer of his conversation with the government employee.  Shortly thereafter, the plaintiff  told Brewer he had consulted an attorney about the overtime issue.  The hostile conversations and labor-intensive tasks outside the plaintiff's job description worsened over the last month of his employment, and he spent the final three days of his employment working at Brewer's hunting camp.  (Plaintiff's Deposition at 74, 92, 109-11, 100, 190, 202-03, 208-09, 213).

The plaintiff lived on CBC property at the defendants' direction, to act as a security guard.  He kept a succession of dogs there, never more than one at a time, and they never caused any problem with defecation or damaging air hoses or other property.

[4]

Two weeks before terminating the plaintiff, Brewer ordered the plaintiff to get rid of the current dog, and the plaintiff did so.  (Plaintiff's Deposition at 94-96, 135-36).

On Saturday, October 30, 2010, the plaintiff had plans to take his kids to the state fair in Pensacola.  That morning, he retrieved his dog from a friend who had been keeping it, with the expectation of delivering it to his daughter that day.  He stopped back by his dwelling on the CBC property and, within an hour, Brewer appeared.  Brewer told the plaintiff they were heading back up to the hunting camp to work some more.  The plaintiff said he could not go because of his plans to be with his kids.  Brewer insisted that he would go, but the plaintiff refused.  Brewer saw the dog at the doorway and went off about the dog.  Then he told the plaintiff he was fired,[1] and he ordered the plaintiff to clear out his things and leave immediately.  Before the plaintiff could comply, an angry Brewer locked the gate and changed the lock.  (Plaintiff's Deposition at 93-94, 96-100, 103).

### B.  Protected Activity.

"[I]t shall be unlawful for any person … to discharge … any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter …."  29 U.S.C. § 215(a)(3).  The defendants suggest that activity protected under this provision requires the institution of legal proceedings to recover unpaid overtime, or at least a statement to the employer that such a claim is forthcoming.  (Doc. 27 at 12, 13 n.4).

The Supreme Court has recently ruled that Section 215(a)(3) "includes oral as well as written complaints within its scope."  *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1329 (2011).  And, as the defendants concede, (Doc. 27 at 13

---

[1] Brewer denies that he fired the plaintiff and states that he merely gave the plaintiff "a final 'ultimatum' to either straighten up or relinquish his employment," with the plaintiff choosing to quit.  (Brewer Affidavit at 2).

[5]

n.4), the Eleventh Circuit has ruled that the provision extends to "unofficial complaints expressed by the [plaintiffs] to their employer" as well as complaints made to governmental representatives or entities. *EEOC v. White & Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989).[2]

In order for an oral complaint to trigger the protection of Section 215(a)(3), there must be "some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Kasten*, 131 S. Ct. at 1334. "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.*

The defendants question whether the plaintiff's statements to Ashberry in March and/or April 2010 attain the necessary degree of formality. (Doc. 27 at 13 & n.4). Even if they do not, however (because they are vague, because they lack a specific demand, or because they were made to a supervisor rather than the employer), the defendants do not address the impact of the plaintiff's statements directly to Brewer in September and/or October 2010. This is perhaps by design, as it would be difficult to support the proposition that an employee's statements to his employer that he has been advised by a federal labor official of his entitlement to overtime and that he has consulted a lawyer on the matter, and his request to the employer to be paid overtime, would not by both content and context alert a reasonable employer that the employee asserts rights to overtime compensation which he calls on the employer to respect.

---

[2] That Justice Scalia disagrees with this position, *Kasten*, 131 S. Ct. at 1337 (Scalia, J., dissenting), does not, as the defendants appear to believe, (Doc. 27 at 13 n.4), authorize this Court to ignore the Eleventh Circuit's direction.

In summary, on the record and argument presented it remains open to the plaintiff to establish that he engaged in activity protected under Section 215(a)(3).

## C. Causal Connection.

The defendants primarily assert that the plaintiff cannot establish the necessary causal connection because "close temporal proximity" between his protected conduct and his termination is lacking, since he was fired some six months after his comments to Ashberry.  (Doc. 27 at 13).[3]  The argument fails at several points.

First, the defendants have not established that the plaintiff's statements to Ashberry constitute protected activity; on the contrary, they have argued these statements do *not* constitute protected activity.  (Doc. 27 at 13 n.4).  They have therefore failed to show that the clock began to run when those statements were made or were conveyed to the defendants.  The plaintiff's remaining comments all occurred within two months of his termination, and the defendants admit that this time frame is sufficiently tight to support a prima facie case of causation based on close temporal proximity alone.  (*Id*. at 13).

Second, even if the March-April comments constitute protected activity, the defendants have not shown that close temporal proximity cannot be measured from subsequent episodes of protected activity, especially when – as here – the plaintiff's later comments are clearer and more overtly demanding.[4]

----

[3] The defendants stress that Brewer's abusive language and demands for manual labor at his hunting camp are not independently actionable adverse employment actions.  (Doc. 32 at 3-4, 6).  This may or may not be correct, but it is irrelevant; the adverse employment action on which the defendant's retaliation claim is based is his termination.

[4] The single case cited by the defendants – a trial court decision from another Circuit – stands only for the unremarkable proposition that, once a plaintiff files an EEOC charge, subsequent developments concerning the charge do not re-start the temporal proximity clock. (Doc. 32 at 7).

Third, close temporal proximity is necessary only when there is no other evidence of a causal connection.[5]  Here, there is additional evidence, in the form of the defendants' escalating use of verbal abuse and demands for manual labor on personal projects – behavior that increased to new levels each time the plaintiff brought up the subject of overtime compensation.[6]

The defendants also argue there is no evidence they were aware of any protected activity at the time the plaintiff was terminated.  (Doc. 27 at 12).  The evidence is clear, however, that the plaintiff made his comments in September and/or October directly to Brewer.  There is also evidence – from Ashberry's suddenly guarded demeanor immediately after lunch with Brewer – that Brewer was aware of the plaintiff's comments in March and/or April, to the extent those comments may constitute protected activity.

In summary, on the record and argument presented it remains open to the plaintiff to establish a causal connection between his protected activity and his termination.

_____

[5] "Thus, *in the absence of other evidence tending to show causation*, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a  matter of law." *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007) (emphasis added).

[6] The defendants assert that, because they occasionally required the plaintiff to perform labor-intensive work on their private projects even before he raised the overtime issue, there could have been no change in their behavior after he did so.  (Doc. 32 at 5).  According to the plaintiff's evidence, however, the frequency of those demands did increase.  (Plaintiff's Deposition at 190).

The defendants argue the Court must ignore the plaintiff's testimony concerning hostile conversations because he could provide no specific examples of the things Brewer said.  (Doc. 32 at 4).  They cite no case requiring a court to disregard testimony that a defendant used abusive language towards the plaintiff and dressed him down in front of others simply because the plaintiff does not quote the defendant.  Moreover, regardless of the precise content of Brewer's statements, the testimony is clear that he made such statements much more often after the overtime issue was raised, (Plaintiff's Deposition at 83), and this increase in frequency supports the plaintiff's case regardless of the severity of the language used.

[8]

### D.  Pretext.

The defendants offer four bases for the plaintiff's termination:  (1) in the summer of 2010, he took illegal prescription drugs at work; (2) in September 2010, he tested positive for cocaine; (3) on October 30, he brought his dog on CBC property; and (4) on October 30, he refused to work at the hunting camp.  (Doc. 27 at 14).[7]

"The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for discrimination."  *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (internal quotes omitted).  The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational

---

[7] "[T]his Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made." *Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir. 1994). Rather, the defendant "must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998).  The defendant cannot rely on assertions in brief but "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [termination]." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 (11th Cir. 2000) (internal quotes omitted).

The defendants rely on Brewer's affidavit to show why he fired the plaintiff, but that document lists only the first three matters set forth in text.  (Doc. 29, Exhibit A).  That omission would require the Court to ignore the fourth, had not the plaintiff placed into evidence the defendants' response to his claim for unemployment benefits, (Doc. 31, Exhibit C at 1), which the plaintiff recognizes as implicating the fourth basis.  (Doc. 31 at 10).  The plaintiff argues that this reason does not qualify as a legitimate reason because it was an effort to force him to work overtime without pay.  (*Id*. at 6, 10, 14).  Assuming without deciding that this argument is otherwise sound, the plaintiff has not produced evidence that working at the hunting camp on Saturday would have pushed his weekly hours above 40; the mere fact that his payroll records routinely show 40.0 hours per week does not, as he believes, (*id*. at 5 n.5), indicate that he had actually worked that many hours but reflects only that he was a salaried employee.  Notably, the plaintiff has not submitted his personal log book of hours actually worked.  Nor has he testified that he had already worked any given number of hours that week.

jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008). Of course, "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1349 (11th Cir. 2007) (emphasis in original, internal quotes omitted). To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

"In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc) (emphasis added). The defendants ask the Court to employ this rule and require the plaintiff to show a jury issue on pretext as to each of the four bases listed above. (Doc. 27 at 11; Doc. 32 at 9). They have not, however, shown that these can be construed as four separate, independently adequate reasons for the plaintiff's termination, since Brewer testified that "[t]he *combination* of these factors is *the reason*" the plaintiff was fired. (Doc. 29, Exhibit A at 2) (emphasis added)). At any rate, and as discussed below, the plaintiff has adequate evidence of pretext regardless of how Brewer's affidavit is interpreted.

The plaintiff does not deny taking Lortab while employed by the defendants, though he was not asked whether he did so while at work. (Plaintiff's Deposition at 63-64). He does deny that anyone at CBC ever talked with him about it or that he was ever put on probation over it, (*id.* at 64, 68), which directly contradicts Brewer's statement that he put the plaintiff on probation because of it. (Brewer Affidavit at 1). Moreover, when the defendants responded to a request for information from the Department of Industrial Relations ("DIR") in November 2010, they gave reasons for his termination but did not

mention the plaintiff's Lortab usage as a reason, (Doc. 31, Exhibit C at 1-2), which undermines their current reliance on such usage.[8]

Nor does the plaintiff deny testing positive for cocaine on a random drug test on September 17, 2010.  (Doc. 31, Exhibit C at 3).  However, he points out that:  (1) the defendants were sent these results the same day and were quickly aware of them, yet they allowed him to continue driving the defendants' vehicles throughout the remainder of his employment, in apparent violation of state and federal law; (2) he was not (Brewer's testimony notwithstanding) placed on probation because of it; and (3) the defendants did not mention the drug test to DIR when giving reasons for the plaintiff's separation.  (Doc. 31 at 6-7,10, 14-15; Plaintiff's Deposition at 67-68, 198; Doc. 31, Exhibit C at 1-2).  This is ample evidence that the defendants did not really rely on the positive drug test result in terminating the plaintiff.[9]

Though possible, it is unlikely that an employer willing to let an employee drive company vehicles illegally would fire him over a dog, especially since Brewer admits he knew the dog had arrived only that morning.  (Brewer Affidavit at 2).  Moreover, as discussed below, there is evidence that the order to remove the dog was itself a product of retaliation, not any genuine concern over the dog, which suggests that the reaction to the dog's brief reappearance was similarly motivated.

As discussed in note 8, *supra*, Brewer's affidavit – which was prepared for the precise purpose of supporting the defendants' motion for summary judgment – does not

---

[8] The defendants note that the DIR form does not *require* the employer to list *every* reason for a separation.  (Doc. 32 at 8 n.7).  Fair enough, but it is reasonable to infer that an employer who fails to list a reason did not really rely on that reason.

[9] The defendants note that testing positive for cocaine is a fireable offense and that Brewer was angry when he confronted the plaintiff with the test results.  (Doc. 32 at 8-9).  Unhappy or not, the defendants allowed the plaintiff to continue driving their vehicles, thereby risking administrative action and lawsuits, and did not (according to the plaintiff) even place him on probation.  That conduct is inconsistent with a termination based on cocaine usage, especially when coupled with a failure to tell DIR that drug use played a role.

mention the plaintiff's refusal to work at the hunting camp on October 30 as playing any part in the decision to terminate him.  Instead, the affidavit explicitly limits the reasons for the termination to the plaintiff's Lortab use, his positive drug test, and the return of the dog.  The defendants' failure even to assert, in a carefully prepared affidavit, that they fired the plaintiff because he refused to work patently supports an inference that they did not rely on that refusal.

As to all four articulated bases for the plaintiff's termination, the defendants' increasingly negative treatment of the plaintiff provides evidence that the real reason for his termination was his protected activity.  Immediately after Ashberry informed Brewer that the plaintiff was keeping a log of his hours and felt himself entitled to overtime, Brewer apparently ordered Ashberry not to discuss the matter with the plaintiff.  A month or so later, as the plaintiff continued his time log, Brewer began directing abusive language and public chastisements at the plaintiff at a much more frequent rate.  A month or two later, he began assigning the plaintiff labor-intensive tasks unrelated to his duties as a driver at a much more frequent rate, uncompensated work that routinely pushed his total hours to 50 or 55 a week.  In the last two months of his employment, the plaintiff: directly asked Brewer to pay him by the hour; told Brewer that a labor department official had said he was entitled to overtime pay; and told Brewer he had contacted a lawyer for assistance in the matter.  Brewer promptly ramped up his use of abusive language, public chastisements and non-work-related manual labor assignments, and he then ordered the plaintiff to get rid of his dog.  This pattern of increased mistreatment each time the plaintiff broached the subject of overtime suggests that the defendants acted from displeasure with his interest in overtime compensation and that their final action – the plaintiff's termination – flowed from the same source.  The inference is strengthened because the plaintiff's refusal to work an unscheduled Saturday could be seen by Brewer as another act of resistance to working uncompensated overtime hours (as he routinely did), whether or not working that particular day would have resulted in overtime.

[12]

The defendants assert that all this is irrelevant because the plaintiff has admitted he was not terminated based on overtime issues.  (Doc. 27 at 15-16; Doc. 32 at 12-13).  It is correct that the plaintiff responded "no" when asked, "You don't think you were terminated for this overtime issue, do you?"  (Plaintiff's Deposition at 72).  It is also true, however, that the plaintiff almost immediately attempted to change his response and that defense counsel refused to allow him to revisit the question.  (*Id*. at 73).  It thus fell to plaintiff's counsel to repeat the inquiry, whereupon the plaintiff gave the corrected response – "yes" – that defense counsel refused to permit.  (*Id*. at 207-08).  The defendants identify no legal proposition allowing them to obtain summary judgment based on testimony elicited under such circumstances.  Nor do they offer legal authority for the proposition that what a plaintiff "thinks" motivated the defendant negates mountains of evidence that the defendant acted from an illegal motive.  The Court will not endeavor to fill these gaps on the defendants' behalf.

In summary, on the record and argument presented it remains open to the plaintiff to establish that the defendants' articulated reasons for terminating the plaintiff are a pretext for unlawful retaliation.

## CONCLUSION

The Court has and expresses no opinion concerning the ultimate merits of the plaintiff's retaliation claim.  Based on the limited presentation of the parties, the defendants' motion for partial summary judgment is **denied**.

DONE and ORDERED this 5th day of December, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

[13]